UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROY GREEN,

            Plaintiff,           CIVIL ACTION NO. 12-cv-14999

    vs.

                           DISTRICT JUDGE BERNARD A. FRIEDMAN

COMMISSIONER OF         MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

           Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Roy Green seeks judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 12) and Defendant's Motion for Summary Judgment (docket no. 13). Plaintiff filed a Reply to Defendant's Motion. (Docket no. 14.) The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this Report and Recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

I.      RECOMMENDATION:

This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 12) be GRANTED IN PART AND DENIED IN PART and that this matter be remanded so that the ALJ can properly consider Plaintiff's depression and anxiety in accordance with this Report and

Recommendation.  Therefore, the Court further recommends that Defendant's Motion for Summary Judgment (docket no. 13) be DENIED.

## II.    PROCEDURAL HISTORY:

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of November 17, 2010, and application for Supplemental Security Income with a protective filing date of March 25, 2009, alleging that he had been disabled since March 2, 2009, due to Multiple Sclerosis (MS), Speech Disarticulation, Degenerative Disc Disease, COPD, and Depression.  (*See* TR 12.)  Plaintiff later amended his alleged onset date to December 3, 2010.  (*See* TR 12.)  The Social Security Administration denied benefits, and Plaintiff requested a *de novo* hearing, which was held on May 10, 2012, before Administrative Law Judge (ALJ) Jessica Inouye, who found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy.  (TR 12-22.)  The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced this action for judicial review.  The parties then filed their instant Motions.

## III.    PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE[1]

### A.    Plaintiff's Testimony

Plaintiff was 45 years old at the time of the administrative hearing and 43 years old at the amended time of alleged onset.  (*See* TR 397.)  At the time of the hearing, Plaintiff lived with his

---

[1]As discussed herein, Plaintiff's Motion asserts that the ALJ erred at Step 2 of his analysis when she found that Plaintiff's speech disarticulation, depression and anxiety, degenerative disc disease, and weakness and fatigue were not severe impairments and that the ALJ further erred when she did not include any limitations related to these impairments in Plaintiff's RFC.  (*See* docket no. 13.)  Plaintiff raises no issues with regard to the ALJ's conclusions related to his other impairments.  Therefore, this Report and Recommendation will focus on the allegedly overlooked impairments and will only discuss Plaintiff's remaining impairments when necessary for context.

wife, his 17-year-old daughter, and his four-year-old granddaughter.  (TR 397.)  Plaintiff testified that he had a 10th grade education and had not worked since December 2003 due to his MS, weakness in his arms and legs, a stutter, balance problems, problems with fatigue, and neck pain that radiates down his back.  (TR 399, 405-06, 408-10.)  Plaintiff testified that he had previous work experience laying underground pipe, working at a roofing company, polishing bumpers, and mixing paint.  (*See* TR 402-05.)  At the time of the hearing, Plaintiff's only source of income was through cash assistance provided by the State of Michigan.  (TR 397-98.)

With regard to his physical ailments, Plaintiff testified that his arms and legs "get tired out, like, super fast."  (TR 405.)  He testified that his muscles would just give out and that they would sometimes spasm.  (TR 407.)  He further testified that he had balance problems and general problems with fatigue, which caused him to lay down for 60 to 90 minutes twice a day.  (TR 408.)  Moreover, Plaintiff stated, he had neck pain that radiated down his back, which kept him awake at night and made it difficult for him to turn his head.  (TR 408-10.)  Plaintiff testified that the combination of fatigue and neck pain limited him to walking one block and standing for only short periods of time before his legs gave out.  (TR 416-17.)  He added that he could only lift and carry 15 to 20 pounds and that he could only carry that weight about 50 feet.  (TR 417.)  Plaintiff further testified that he had trouble reaching and gripping because of his neck.  (TR 418.)  Plaintiff also added that he had been dealing with a stutter for most of his life, but it had gotten worse in the three years leading up to his hearing.  (TR 405-06.)

Plaintiff acknowledged that he had "been diagnosed with MS, or . . . a clinically isolated syndrome" in 2009 and that he had recently been prescribed Avonex to alleviate his symptoms.  (TR 406-07.)  The Avonex, however, caused him to have flu-like symptoms for several days after each dose.  (TR 406-07.)  He added that at the time of the hearing, he had recently undergone a CT scan

3

of his neck and back, which showed "[s]omething about the C5 or C6 vertebra" and that his doctor told him that "[t]here was something rubbing or something back there." (TR 409.) Plaintiff testified that he used marijuana once every couple of weeks to "take[] the edge off the pain in [his] body" and that he was recently prescribed Robaxin and Norco because of his neck. (TR 413, 424.)

With regard to his mental impairments, Plaintiff testified that he began "going through like anxiety and stuff" sometime in 2010 and that at the time of the hearing, he was being treated with Elavil, Klonopin, and Cymbalta for anxiety and depression. (TR 414.) He testified that he had trouble with mood swings and that he felt as if he were "spinning [his] wheels, [but] ain't getting nothing done." (TR 415.) He further testified that he had trouble with concentration and that "[i]t's hard to keep focused on a project or whatever [he's] trying to do." (TR 415.)

When asked about his daily activities, Plaintiff testified that he did not perform any of the household chores, that he did "very little" yard work, and that he spent most of his day sitting in the house and napping. (TR 418-19.)

### B.   Medical Record

Defendant asserts that "[t]he ALJ's recitations of the relevant medical evidence and administrative hearing testimony is sufficiently detailed" and does not set forth any statement of facts (Docket no.13 at 7.) Plaintiff, however, asserts that the ALJ did not discuss all of the relevant evidence related to Plaintiff's stutter, depression and anxiety, degenerative disc disease, and fatigue; Plaintiff, therefore, discusses his medical record in detail throughout his brief. (*See* docket no. 12.) Defendant does not suggest that Plaintiff's account of the medical record is inaccurate. Thus, the Court, having conducted an independent review of Plaintiffs' medical record, hereby incorporates by reference the medical record as set forth in the ALJ's opinion (TR 14-15, 16-21) and as set forth in Plaintiff's Motion (docket no. 13). The Court will incorporate additional comments and citations

4

as necessary throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial employment since December 3, 2010, and that he suffered from severe Multiple Sclerosis and chronic obstructive pulmonary disease (COPD). The ALJ also found, however, that Plaintiff suffered from non-severe calf strain and visual impairments, including optic atrophy, dermatochalasis, and ptosis of the eyelid. (TR 14-15.) The ALJ did not discuss Plaintiff's stutter, his mental impairments, his degenerative disc disease, or his general fatigue with regard to whether these impairments were severe or non-severe. (TR 15.) The ALJ further found that Plaintiff's allegations regarding the extent of his symptoms were not wholly credible and that Plaintiff retained the residual function capacity "to perform less than the full range of sedentary work" and added the following limitations:

> . . . The Claimant can sit for no more than 6 hours per 8-hour workday with normal breaks. He can stand and/or walk for no more than 2 hours per 8-hour workday with normal breaks. The claimant can frequently push, pull, and reach overhead with his bilateral upper extremities. He can frequently perform work requiring gross motor function. Due to a 20-degree reduction in the range of function and motion in his neck, the claimant cannot perform work that would require him to hold his head or neck in a static position to the left. The claimant can occasionally perform postural activities but can never climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to extreme temperatures, pulmonary irritants, humidity, and vibration. The claimant should avoid even moderate exposure to hazards. He must be provided with large-print materials if any reading is required of him. The claimant can perform "unskilled" work.

(TR 16.) The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 21-22.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from December 3, 2010, through the date of the ALJ's decision. (TR 17.)

## V.    LAW AND ANALYSIS

5

**A.      Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

6

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the

pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be remanded under sentence 4 because the ALJ "failed to properly address all of Plaintiff's severe impairments, resulting in a residual functional capacity (RFC) that is incomplete and unsupported by the evidence." (Docket no. 12 at 5.) Plaintiff asserts that the ALJ erred at Step 2 of the sequential analysis when she failed to find that Plaintiff's speech disarticulation, depression and anxiety, degenerative disc disease, and weakness and fatigue were each severe impairments. (*Id.* at 8.) Moreover, Plaintiff argues, even if these impairments were not severe, the ALJ failed to consider any limitations caused by these impairments in determining Plaintiff's RFC. (*Id.*)

To establish a severe impairment, Plaintiff must prove his impairment by objective, medical evidence. *See, e.g.*, 20 C.F.R. § 404.1508 (physical and mental impairments must be established by medical evidence consisting of signs, symptoms, and laboratory findings). A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment will be considered non-severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). Step 2 of the framework "has been described as a 'de minimus hurdle,' . . . 'allowing the Secretary to screen out totally groundless claims.'" *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). An ALJ should only find that an impairment is not severe when the

8

impairment "has no more than a minimal effect on the ability to do basic work activities." SSR-9603p. This is because the regulations do no more than "allow the [Commissioner] to deny benefits summarily to those applications with impairments of a minimal nature that could never prevent a person from working." SSR 85-28 1985 WL 56856 (1985) (citations omitted).

As long as the ALJ finds that the claimant has a severe impairment, the ALJ must then consider the functional limitations resulting from all of the claimant's impairments, whether severe or non-severe, when determining Plaintiff's RFC. *See Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). There is no dispute that an ALJ is required to evaluate the claimant's entire record when formulating the plaintiff's RFC. *Webb v. Comm'r*, 368 F.3d 629, 633 (6th Cir. 2004) (citing 20 C.F.R. § 416.920(a)(4)(iv)). But there is no mandate that the ALJ discuss all of the evidence of record. To the contrary, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). When arguing in support of the ALJ's decision, however, the defendant is not permitted to engage in post-hoc rationalization. *See Hunter v. Astrue*, No. 1:09 CV 2790, 2011 WL 6440762, at *4 (N.D. Ohio Dec. 20, 2011) (citing *S.E.C. v. Chenery*, 332 U.S. 194, 196 (1947)).

### 1.      Plaintiff's Speech Disarticulation

Plaintiff asserts that his speech disarticulation (that is, his "pronounced" stutter) is a severe impairment that the ALJ failed to consider. (Docket no. 12 at 9.) Moreover, Plaintiff argues, the ALJ failed to consider any related functional limitations. (*Id.* at 10.) In support of this contention, Plaintiff notes that the ALJ only mentioned his stutter in passing (TR 17) and that his medical records show that his stutter has been persistent and that it had gotten worse through at least January

2012.  (*See* docket no 12 at 9.)  Defendant contends that the ALJ acknowledged Plaintiff's stutter, and although Plaintiff now claims that his stutter "significantly inhibits his communication and interaction with other people" (*see id*. at 10), Plaintiff has neither claimed nor shown that his stutter resulted in any work-preclusive limitations.[2]  (Docket no. 13 at 10.)

When making his Step-2 determination, the ALJ found that Plaintiff had severe MS and COPD, but he also noted that Plaintiff "allege[d] an additional physical impairment of calf strain and visual impairments including optic atrophy, dermatochalasis (extra tissue) and ptosis (drooping) of the eyelid."  (TR 14-15.)  The ALJ then noted that "in deference to the claimant's subjective complaints of limitation, the undersigned has incorporated restrictions in the residual functional capacity (RFC) assessment below that correspond with these 'non-severe' conditions."  (TR 15.)  The ALJ made no mention of Plaintiff's stutter (or his anxiety and depression, degenerative disc disease, or fatigue and weakness).

When determining Plaintiff's RFC, the ALJ discussed Plaintiff's MS and his COPD in detail.  (TR 17-18.)  And he noted that "[w]ith regard to his allegedly related speech disarticulation, the claimant confirmed that he has had a stutter for many years but testified that it had worsened in the last three."  (TR 17.)  The ALJ made no further mention of Plaintiff's stutter, did not discuss whether or how he would account for this impairment in Plaintiff's RFC, and does not appear to have accounted for any resulting limitation.  And while Defendant asserts that Plaintiff neither sought

---

[2]As Plaintiff indicates, the opening paragraph of Defendant's argument appears to be copied from another brief: Defendant indicates that the ALJ found that the plaintiff had severe "degenerative disc disease, degenerative joint disease, sleep apnea, morbid obesity, gastroesophegeal reflux disease, vascular dementia with depressed mood, and panic disorder." (Docket no. 13 at 8.)  Moreover, Defendant states that the plaintiff is challenging the ALJ's finding that "*her* Fibromyalgia, shoulder impairment, and hypertension" were not severe.  (*Id.* (emphasis added).)  Neither of these statements are accurate, but the remainder of Defendant's argument appears to properly address Plaintiff's case.

10

treatment nor was he referred to a speech therapist (docket no. 13 at 10), because the ALJ did not even imply such an analysis, Defendant's argument amounts to nothing more than post-hoc rationalization for the ALJ's decision not to include any limitations related to Plaintiff's stutter.

Nevertheless, Plaintiff has provided no evidence to suggest the existence of any functional limitations that the ALJ should have included.  While Plaintiff alleges that his stutter "significantly inhibits his communication and interaction with other people," he has not provided any evidence to support that assertion; and more importantly, it does not appear that he provided such evidence to the ALJ.  To the contrary, as Defendant points out, Plaintiff testified that his stuttering problem was a long-term problem, and that it got worse "after I got out of that shop down there;" that is, after Plaintiff's employment ended.  (TR 405-06.)  Plaintiff did not indicate, in his testimony or elsewhere, that his stuttering caused any employment-related limitations.  Therefore, the ALJ did not err when she chose not to include any such limitations in Plaintiff's RFC.

### 2.      Plaintiff's Anxiety and Depression

Like he did with regard to his stutter, Plaintiff argues that the ALJ failed to consider numerous notations in his medical record indicating that he suffered from depression and anxiety. (Docket no. 12 at 10-11.)  Plaintiff points to ongoing notations from January 2011 through October 2012 indicating that Plaintiff suffered from these conditions.  (*Id.*)  Defendant argues that the ALJ did discuss Plaintiff's depression and anxiety and that Plaintiff did not allege that these conditions caused any functional limitations.  (Docket no. 13 at 10-11.)

In her decision, the ALJ acknowledged that Plaintiff alleged that he "suffered with additional impairments of depression and panic attacks."  (TR 17.)  She also noted that Plaintiff said that he "experiences depression because he can no longer do what he once could," that he has "constant anxiety and experiences frequent mood swings," and that he "has trouble finishing tasks and/or

11

maintaining focus." (TR 18.) She further noted that Plaintiff's anxiety began in 2010 and that as of the time of her decision, Plaintiff was treating with Elavil, Klonopin, and Cymbalta, but he was not treating with a psychologist. (TR 18.)

Unlike his unsupported assertion that his stutter caused general functional limitations, Plaintiff stated specific limitations caused by his depression and anxiety: "he has trouble finishing tasks and/or maintaining focus." (*See* TR 18.) Plaintiff testified that he "can't do the things [he] used to do," he feels like he is "spinning [his] wheels [but isn't] getting nothing (sic) done," and he finds it "hard to keep focused on a project." (TR 415.) And Plaintiff's medical record is replete with confirmation from his physicians that he suffers from depression and anxiety. (*See* docket no. 12 at 10.)

While the ALJ is not required to discuss every piece of evidence, the ALJ discussed none of the objective evidence supporting Plaintiff's subjective claims of depression and anxiety. Moreover, to the extent that the ALJ found Plaintiff's assertions less than wholly credible, an ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. And the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain

12

relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ appears to have wholly discounted Plaintiff's statements regarding the limiting effects of his depression and anxiety *despite* medical records that arguably support Plaintiff's contentions. Moreover, even if Plaintiff did not have medical records supporting his statements, the ALJ failed to consider any of the factors set forth in Section 416.929(c) with the exception of Plaintiff's failure to seek therapeutic treatment. At a minimum, the ALJ's decision fails to make specific the weight that the ALJ gave to Plaintiff's claims of concentration problems or, to the extent the ALJ gave the statements no weight, the reason she gave them no weight. Therefore, Plaintiff's Motion should be granted in this regard, and this matter should be remanded so that the ALJ can properly discuss Plaintiff's depression- and anxiety-related limitations and include any such limitations in Plaintiff's RFC if the ALJ finds such limitations appropriate.

### 3.    Plaintiff's Degenerative Disc Disease

With regard to Plaintiff's degenerative disc disease, Plaintiff again points to numerous medical records supporting his contention that he has degenerative disc disease. (*See* docket no. 12 at 12-14.) Plaintiff also draws the Court's attention to several findings by the ALJ that Plaintiff asserts are inconsistent with the record. (*Id.* at 13-14.) For example, Plaintiff asserts that the ALJ's finding that a 2012 MRI was "largely consistent with" MRIs from 2011 and 2010 is erroneous because "the actual findings of any of these MRIs completely contradicts [the ALJ's] conclusion that Plaintiff's conditions stabilized and resolved." (*Id.* at 13.) To the contrary, Plaintiff argues, the MRIs "clearly indicate[] that Plaintiff's condition worsened over the course of these years, rather than 'stabilizing' and 'resolving' as [the ALJ] found." (*Id.* at 13-14.)

13

Defendant, however, also points to a myriad of records supporting the ALJ's decision. Thus, while there is evidence to support Plaintiff's contention, and the ALJ could have discussed and considered all of the evidence in the record in greater detail, the Court finds that the interpretation of the evidence with regard to this issue falls within the ALJ's zone of choice. *See Mullen*, 800 F.2d at 545. Therefore, the ALJ's decision is supported by substantial evidence, and Plaintiff's Motion should be denied with regard to this issue.

### 4.      Plaintiff's Fatigue and Weakness

Finally, Plaintiff argues that the ALJ failed to account for the level of fatigue and weakness that is associated with his MS. (Docket no. 12 at 14-15.) Plaintiff asserts that the ALJ acknowledged his fatigue and weakness but found that his symptoms did not worsen in severity until after Plaintiff's date last insured; thus, Plaintiff asserts, the ALJ erroneously found that the symptoms were irrelevant because even if the symptoms did not worsen until after Plaintiff's date last insured, such a finding would not preclude benefits under Title XVI for Supplemental Security Income. (*Id*. at 14.) Again, Plaintiff sets forth numerous records addressing Plaintiff's fatigue, and he argues that the ALJ failed discussed this evidence. (*Id.* at 15.)

Defendant argues that the ALJ did discuss evidence of Plaintiff's weakness and fatigue following his date last insured. (Docket no. 13 at 13.) Moreover, the ALJ's decision reads, in relevant part, as follows:

> While the undersigned acknowledges that the claimant's MS has imposed functional limitations for some time, the above-referenced evidence demonstrates that the claimant's fatigue and reported loss of function attributable to this condition did not occur until after December 31, 2010, his date last insured. *Furthermore*, this evidence *also shows* that the claimant's MS *has yet to impose* work-preclusive and disabling functional limitations.

(TR 19 (emphasis added).) Thus, it appears that the ALJ did consider whether Plaintiff's fatigue and

weakness had imposed any work-preclusive functional limitations following his date last insured through the date of the ALJ's decision.  Aside from the ALJ's failure to discuss all of the evidence in Plaintiff's medical record, which the ALJ is not required to do, nothing in the ALJ's opinion suggests that she limited her review to evidence preceding Plaintiff's date last insured.

Additionally, the ALJ found that Plaintiff was limited to sedentary work and further limited to work that involved no more than sitting for 6 hours and standing or walking for 2 hours in an 8-hour workday with normal breaks.  He was further barred from climbing stairs, ropes, or scaffolds and was required to avoid vibration and even moderate exposure to hazards.  (TR 16.)  Short of implying that a per se finding that Plaintiff was disabled is appropriate, Plaintiff does not suggest what functional limitations the ALJ could have added to his RFC.  Like his degenerative disc disease, the evidence proffered by Plaintiff with regard to his fatigue and weakness does support Plaintiff's contention, but the ALJ's decision is also supported by substantial evidence.  Therefore, while the Court may reach a difference conclusion on a de novo review, Plaintiff's Motion should be denied, and proper deference should be afforded to the ALJ with regard to this issue.

## VI.    CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 12) should be GRANTED IN PART AND DENIED IN PART, and this matter should be remanded so that the ALJ can properly consider Plaintiff's depression and anxiety in accordance with this Report and Recommendation.  Therefore, Defendant's Motion for Summary Judgment (docket no. 13) should be DENIED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for

15

in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: September 09, 2013          s/ Mona K. Majzoub
                                                    MONA K. MAJZOUB
                                                    UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: September 09, 2013          s/ Lisa C. Bartlett
                                                    Case Manager

16